IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

June 30, 2026

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DSIS, LLC,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-349**     (Contractor Lic. Bd., Cease and Desist Order UL016803)

**WEST VIRGINIA CONTRACTOR**
**LICENSING BOARD,**
**Petitioner Below, Respondent**


**MEMORANDUM DECISION**

Petitioner DSIS, LLC ("DSIS") appeals Respondent West Virginia Contractor Licensing Board's ("Board") August 4, 2025, final order determining that DSIS engaged in contracting activities without a valid contracting license and assessing DSIS a $1,000 penalty. The Board filed a response.[1] DSIS filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the lower tribunal's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the Board's decision is reversed.

DSIS is the record owner of a parcel of real estate located in Westover, West Virginia. DSIS is registered with the West Virginia Secretary of State as a limited liability company. Joseph Panico is DSIS's managing member.

On February 28, 2023, DSIS, on behalf of Carline Excavating, applied for a building permit from the City of Westover for Carline Excavating to grade the property for a single-family residence. Then on May 9, 2024, DSIS applied for a second building permit from the City of Westover to perform grading, excavation, and sewer work on the property. DSIS noted on the application that it would perform the grading, excavation, concrete, and sewer work as the property's owner. Next, on August 2, 2024, DSIS applied for a third building permit from the City of Westover to perform electrical and plumbing work on the

---

[1] DSIS is represented by Raymond H. Yackel, Esq. The Board is represented by Attorney General John B. McCuskey, Esq., and Assistant Attorney General Mark S. Weiler, Esq.

1

property. On its application, DSIS stated that it would perform the carpentry, plumbing, and drywall work as the owner of the property, but that A&H Home would perform the roofing work. Finally, on January 31, 2025, DSIS applied for a certificate of occupancy, letter of compliance, and a rental unit registration with the City of Westover for the property.

On April 25, 2025, the Board issued to DSIS a Cease and Desist Order UL016803 ("Order") for engaging in contracting activity without a valid contractor license to work at the property. At that time, the work was already completed, and DSIS utilized the single-family residence as a rental property.

The Board conducted a hearing on July 31, 2025, regarding the Order issued to DSIS. Mr. Panico appeared and provided testimony. The Board took the matter under advisement, and on August 4, 2025, the Board issued its final order. The Board determined that DSIS was a "contractor" within the meaning of West Virginia Code § 30-42-3(d) (2021), and that it engaged in the construction of a single-family residence in the City of Westover without a contractor license in violation of West Virginia Code § 30-42-6(a) (2021). The Board assessed DSIS a penalty in the amount of $1,000 for that violation. This appeal of the Board's August 4, 2025, decision followed.

Our standard of review for final orders issued by the Board is as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

West Virginia Code § 29A-5-4(g) (2021). Further, "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995); *see Pers. Temp. Servs., a Div. of Pers., Inc. v. W. Va. Div. of Labor Contractor Licensing Bd.*, 197 W. Va. 149, 151, 475 S.E.2d 149, 151 (1996)

2

(interpretations of the West Virginia Contractor Licensing Act and its legislative rules are reviewed de novo). With these standards in mind, we turn to the parties' arguments.

On appeal, DSIS argues that it was not required to obtain a contractor license because it was not engaged in activities of a contractor as defined in the Act. We agree and reverse the Board's August 4, 2025, final order.

In determining how a specific statute should be applied, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Ancient Energy, Ltd. v. Ferguson*, 239 W. Va. 723, 726, 806 S.E.2d 154, 157 (2017) (quoting *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995)). In other words, "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." *Id.* (quoting Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970)). Upon review, we find that West Virginia Code § 30-42-3(d) and West Virginia Code of State Rules § 28-2-3.12 (2022) are unambiguous.

West Virginia Code § 30-42-3(d) defines a contractor as a person who undertakes construction work "for compensation." The corresponding legislative rule similarly defines "contracting work" as the furnishing of work or materials "for another…in fulfillment of a contract." W. Va. Code R. § 28-2-3.12 (2022).[2] The Board urges a broad interpretation of the Act, asserting that the contractor licensing requirements are designed to protect the public from unfair and unsafe construction practices and they are intended to ensure that all substantial construction work—particularly work on dwellings later rented to the public—is performed or overseen by licensed contractors. We do not discount the importance of these policy considerations. However, the Legislature chose to define a "contractor" as one who undertakes construction work "for compensation" or "for another…in fulfillment of a contract." These textual limits reflect legislative intent about the scope of the Board's regulatory authority. If the Legislature wishes to extend licensure requirements to owners such as DSIS who construct improvements on their own property for rental or investment purposes, but are not compensated by another, it may amend the statute accordingly. It is not the role of this Court to expand the definition of contractor beyond the statute's express terms.

The Board further argues that DSIS acted as a contractor because it engaged Carline Excavating and A&H Home to perform excavating and roofing work on the residence. We disagree. The regulatory definition requires that a contractor submit a bid or furnish work

---

[2] W. Va. Code R. § 28-2-3 was revised, effective May 4, 2026. The definition of contracting work did not change, and thus, our decision is not impacted by the recent update.

3

or materials "for another…in fulfillment of a contract." W. Va. Code R. § 28-2-3.12. The mere fact that a property owner hires a separate firm to perform a discrete trade on its own project does not, without more, establish that the owner is contracting to improve property for another. Here, Carline Excavating and A&H Home were the only parties performing contracting work "for another," namely, for DSIS. DSIS itself remained in the position of an owner improving its own property, not a contractor furnishing construction services to a third party.

Finally, the Board contends that DSIS's receipt of rental income after completion of the residence constitutes "compensation" for construction work. This argument conflates two legal concepts: the construction of improvements to real property and the subsequent leasing of that property. Under West Virginia law, "rent" is consideration for the use and occupancy of a dwelling unit, not payment for construction services. *See* West Virginia Code § 37-6A-1(11) (2011) ("'Rent' means all money, other than a security deposit, a nonrefundable fee or money paid to the landlord by the tenant for damage caused by the tenant to the dwelling unit, owed or paid to the landlord under the rental agreement."); *see also Rent,* BLACK'S LAW DICTIONARY (12th ed. 2024) (defining rent as "[c]onsideration paid, usu. periodically, for the use or occupancy of property (esp. real property)"). While parties to a rental agreement could, in theory, allocate a portion of rent as payment for prior construction services, the Board identifies no such provision here, and the record contains no evidence that DSIS's tenant agreed to compensate DSIS for construction work.

Accepting the Board's position would effectively render the statutory phrases "for compensation" and "for another…in fulfillment of a contract" meaningless in any case where an owner improves property for eventual rental or sale, because any future economic benefit—rent or sale proceeds—could be recharacterized as construction compensation. We decline to adopt an interpretation that would dramatically expand the statute beyond its text. In this case, DSIS received compensation only for the tenant's use and occupancy of the completed dwelling, not for construction services performed for another.

Based on the foregoing, we conclude DSIS was not required to obtain a contractor license, and the $1,000 penalty was assessed to DSIS in error. Accordingly, we reverse the Board's August 4, 2025, final order.

Reversed.

**ISSUED:** June 30, 2026

4

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White